JANINE A. CARLAN (C.A. SB # 197613)
janine.carlan@afslaw.com
**ARENTFOX SCHIFF LLP**
44 Montgomery St., 38th Floor
San Francisco, CA 94104
Telephone:     (415) 757-5500
Facsimile:      (415) 757-5501

JASJIT S. VIDWAN (D.C. SB # 252512)
(*pro hac vice pending*)
jasjit.vidwan@afslaw.com
**ARENTFOX SCHIFF LLP**
1717 K St., NW,
Washington, D.C. 20006
Telephone:     (202) 857-6000
Facsimile:      (202) 857-6395

*Attorneys for Declaratory Judgment Defendants*
*ŌURA HEALTH OY and OURARING INC.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ŌURA HEALTH OY and OURARING INC.,<br><br>Defendants. | CASE NO. 3:24-cv-03245-AMO<br><br>**DECLARATORY JUDGMENT DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR DECLARATORY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          October 10, 2024<br>Time:         2:00 p.m.<br>Courtroom:  10, 19th Floor<br>Judge:        Hon. Araceli Martinez-Olguin |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 10, 2024, at 2:00 p.m , or as soon thereafter as the Court's schedule allows, in Courtroom 10 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, Nineteenth Floor, San Francisco, California 94102, Declaratory Judgment Defendants Ōura Health Oy and Ouraring Inc. (collectively, "Oura") move to dismiss the Complaint For Declaratory Judgment (ECF No. 1, the "Complaint" or "Compl.") filed by Declaratory Judgment Plaintiffs Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung").

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that this Court lacks subject matter jurisdiction because Samsung has failed to allege an actual controversy between it and Oura as of the filing of the Complaint.

Oura's Motion is based on this Notice of Motion and Motion to Dismiss, the following Memorandum of Points and Authorities, the attached Declaration of Janine A. Carlan In Support of Declaratory Judgment Defendants' Motion To Dismiss Complaint For Declaratory Judgment, all files and records in this action, and anything else the Court may consider.  Oura seeks an order dismissing Samsung's Complaint for lack of subject matter jurisdiction.

**ISSUES TO BE DECIDED**

Whether Samsung established subject matter jurisdiction for its Declaratory Judgment action asserting non-infringement of Oura's patents even though Oura has made no affirmative acts to assert that Samsung's purported future product infringes Oura's patents, and Samsung has not even produced, imported, offered to sell, or sold a single purportedly non-infringing product in the United States.

Dated:  June 14, 2024                              Respectfully submitted,

By: /s/ Janine A. Carlan

Janine A. Carlan (C.A. SB # 197613)
janine.carlan@afslaw.com
**ARENTFOX SCHIFF LLP**
44 Montgomery St., 38th Floor
San Francisco, CA 94104
Telephone:     (415) 757-5500
Facsimile:      (415) 757-5501

Jasjit Vidwan (D.C. SB # 252512)
(*pro hac vice pending*)
jasjit.vidwan@afslaw.com
**ARENTFOX SCHIFF LLP**
1717 K St., NW,
Washington, D.C. 20006
Telephone:     (202) 857-6000
Facsimile:     (202) 857-6395

*Attorneys for Declaratory Judgment Defendants*
*ŌURA HEALTH OY and OURARING INC.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................ 1

II.    STATEMENT OF FACTS ............................................................................................... 2

    A.    Samsung Admits It Has Not Received Any Communication From Oura........................................................................................................................ 3

    B.    Samsung Admits It Has Not Even Begun Production Of Its Ring Product ..................................................................................................................... 3

    C.    Samsung Points To Oura's Suits Against A Limited Number Of Companies That Had Begun Sales In The U.S.—Not "Indiscriminate Assertions" "Against Any And All Competitors" ...................... 3

    D.    Samsung Distorts Oura's And Its CEO's Public Statements, Which Did Not Threaten Suit Against Samsung........................................................... 4

III.    LEGAL STANDARD ..................................................................................................... 5

IV.    ARGUMENT .................................................................................................................. 6

    A.    Samsung's Allegations Fail To Establish Subject Matter Jurisdiction As A Matter Of Law............................................................................ 6

        1.    Samsung Does Not Allege Any Affirmative Act By Oura...................... 6

        2.    The Remaining Circumstances Samsung Alleges Confirm There Is No Jurisdiction................................................................... 8

    B.    Samsung's Allegations Are On Their Face Incorrect And Distortions Of The Public Record......................................................................... 12

V.    CONCLUSION.............................................................................................................. 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### CASES

4

*3D Sys., Inc. v. Envisiontec, Inc.*,
5    575 F. Supp. 2d 799 (E.D. Mich. 2008)..................................................................11

6 *AIDS Healthcare Found., Inc. v. Gilead Scis., Inc.*,
   890 F.3d 986 (Fed. Cir. 2018)....................................................................1, 6, 9
7

8 *Allied Mineral Prods. v. OSMI, Inc.*,
   870 F.3d 1337 (Fed. Cir. 2017)............................................................ *passim*

9 *Bradley v. Chiron Corp.*,
   136 F.3d 1317 (Fed. Cir. 1998)..................................................................12
10

11 *Celltrion Healthcare Co., Ltd. v. Kennedy Tr. for Rheumatology Rsch.*,
   No. 14 Civ. 2256 (PAC), 2014 U.S. Dist. LEXIS 166491 (S.D.N.Y. Dec. 1,
12    2014) .......................................................................................................11

13 *Cepheid v. Roche Molecular Sys., Inc.*,
   No. C-12-4411 EMC, 2013 U.S. Dist. LEXIS 7446 (N.D. Cal. Jan. 17, 2013) ....................10
14

15 *Certain Smart Wearable Devices, Systems, and Components Thereof*,
   Inv. No. 337-TA-1398 (Mar. 13, 2024) .........................................................4
16

17 *Colida v. Motorola, Inc.*,
   77 F. App'x 516 (Fed. Cir. 2003) .................................................................12

18 *Finisar Corp. v. Capella Photonics, Inc.*,
   No. 20-cv-07629-EMC, 2021 U.S. Dist. LEXIS 41077 (N.D. Cal. Mar. 3,
19    2021) .............................................................................................6, 7, 8, 9

20 *First Quality Baby Prods., LLC v. Kimberly-Clark Worldwide, Inc.*,
   No. 1:CV-09-0354, 2009 U.S. Dist. LEXIS 51961 (M.D. Pa. June 15, 2009)......................10
21

22 *Geospan Corp. v. Pictometry Int'l Corp.*,
   598 F. Supp. 2d 968 (D. Minn. 2008) ...........................................................11
23

24 *IMPAX Labs., Inc. v. Medicis Pharm. Corp.*,
   No. C-08-0253 MMC, 2008 U.S. Dist. LEXIS 111789 (N.D. Cal. Apr. 16,
25    2008) .......................................................................................................11

26 *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
   599 F.3d 1377 (Fed. Cir. 2010)............................................................ *passim*

27

28

*KOPP Dev., Inc. v. Metrasens, Inc.*,
    No. 1:21-CV-01216-PAB, 2022 U.S. Dist. LEXIS 36286 (N.D. Ohio Feb. 28,
    2022) .................................................................................................................................11

*McCabe v. Rose*,
    No. SA CV 13-00125-DOC, 2013 U.S. Dist. LEXIS 93930 (C.D. Cal. July 1,
    2013) ...................................................................................................................................9

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007).................................................................................................1, 5, 9, 11

*Microchip Tech. Inc. v. Chamberlain Grp.*,
    441 F.3d 936 (Fed. Cir. 2006)..............................................................................................5

*Ontel Prods. Corp. v. Yeti Coolers, LLC*,
    No. 16-5712 (SDW) (LDW), 2017 U.S. Dist. LEXIS 110508 (D.N.J. June 30,
    2017) ...................................................................................................................................9

*Ōura Health Oy et al. v. Ultrahuman Healthcare Pvt., Ltd. et al.*,
    No. 2:23-cv-00396 (E.D. Tex. Sept. 1, 2023) .......................................................................4

*Ōura Health Oy v. Circular SAS*,
    No. 6:22-cv-00478 (W.D. Tex. May 11, 2022) .....................................................................4

*Proofpoint, Inc. v. InNova Patent Licensing, LLC*,
    No. 5:11-CV-02288-LHK, 2011 U.S. Dist. LEXIS 120343 (N.D. Cal. Oct. 17,
    2011) ..............................................................................................................................8, 10

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ............................................................................................12

## STATUTES

28 U.S.C. § 2201(a) ...........................................................................................................................5

## RULES

Fed. R. Civ. P. 12(b)(1)......................................................................................................................6

## CONSTITUTIONAL PROVISIONS

U.S. Const. Art. III............................................................................................................................5

ARENTFOX SCHIFF LLP
44 MONTGOMERY ST., 38TH FLOOR
SAN FRANCISCO, CA 94104

iii

DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:24-cv-03245-AMO

# I.    INTRODUCTION

Samsung filed a premature action for Declaratory Judgment ("DJ") of non-infringement based on a purported product that Samsung has, by its own admission, not even begun to produce—let alone import, offer for sale, or sell in the United States.  Indeed, Samsung fails to allege (because it cannot) that it received any communication from Oura, let alone a threat of an infringement suit on any of the five patents at issue.  Samsung filed its improper DJ "merely because it would like an advisory opinion." *AIDS Healthcare Found., Inc. v. Gilead Scis., Inc*., 890 F.3d 986, 992 (Fed. Cir. 2018).  And as the Federal Circuit has explained, the "fear of a future infringement suit is insufficient to confer jurisdiction." *Allied Mineral Prods. v. OSMI, Inc.*, 870 F.3d 1337, 1341 (Fed. Cir. 2017).  There is no subject matter jurisdiction for two reasons.

***First***, even taking Samsung's allegations as true (and on their face they are not), they fail to establish an actual controversy as a matter of law.  Samsung fails to identify any requisite "affirmative act" by Oura to enforce its patents against Samsung—no "threats of litigation" directed to Samsung "or even any direct communication" between the parties.  *Id.* at 1340.  That alone is dispositive under controlling Federal Circuit law.  And the rest of the circumstances here confirm there is no actual controversy.  Samsung concedes that its product is not in commercial production and is not marketed in the U.S.  (Compl. (ECF No. 1) ¶ 40).  Instead, Samsung alleges its product *may* be sold and shipped into the United States "in or around August 2024."  (*Id.*).  In other words, Samsung relies on a "hypothetical state of facts," which does not establish jurisdiction.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  Samsung also urges speculation based on mischaracterizing suits that Oura has filed against a limited number of third parties and distorting Oura's general statements in the press.  (Compl. ¶¶ 10-14, 20-31).  But, as a matter of law, the mere "fact that [Oura] had filed infringement suits against other parties for other products does ***not*** … meet the minimum standard." *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010).[1]

***Second***, even worse, Samsung's allegations are facially incorrect based on Samsung's own Complaint and the materials it cites.  Oura does not assert its patents "against each and every one

---

[1] All emphasis is added unless stated otherwise.

of [its] competitors as soon as, or even before, [its competitors] entered the U.S. market." (Compl. ¶ 20). Indeed, Samsung alleges that Oura has sued only three competitors (in a market with at least forty-six), each of whom undisputedly sold the product in the United States prior to Oura filing suit. (*Id*. ¶¶ 20-23). Likewise, Oura and its CEO did not "declare[] its intention to assert its intellectual property against any future smart ring competitors"; rather, as Samsung's Complaint and cited materials recognize, Oura stated it would "take the action that's appropriate" to "defend [Oura's] intellectual property." (*Id*. ¶¶ 24, 27, 31). Samsung's reliance on distortions of the public record underscore that it cannot establish a genuine controversy. But, as discussed, this Court need not resolve those factual disputes: even accepting Samsung's (inaccurate) assertions, there is no controversy.

The Court should dismiss Samsung's Complaint for lack of subject matter jurisdiction.

## II.    STATEMENT OF FACTS

On May 30, 2024, Samsung filed its Complaint seeking DJ that its purported Galaxy Ring does not infringe five Oura patents (the "Oura Patents").[2] (Compl. ¶ 1). As discussed below, Samsung concedes four key facts about its purported product and Oura's actions as of the time of its Complaint: (1) Samsung admits it did not receive any communication from Oura about its purported product or the Oura Patents; (2) Samsung admits that, as of the time of its Complaint (and still now), it had not begun production of its product; (3) Oura has only brought patent lawsuits against a limited number of third parties—hardly "indiscriminate[ly]" against "any and all competitors"—all of whom are unrelated to Samsung, and all of whom sold their infringing product in the U.S. *prior* to the lawsuit; and (4) Samsung never alleges that Oura publicly accused Samsung of infringing any specific U.S. patent, let alone the Oura Patents at issue. The following section summarizes key allegations underlying Samsung's DJ assertion. As discussed in Section IV.A, they are collectively insufficient to establish an actual controversy. And as discussed in Section IV.B, they are facially incorrect and distorted.

---

[2] U.S. Patent Nos. 10,842,429 ("'429 Patent"); 11,868,178 ("'178 Patent); 11,868,179 ("'179 Patent); 10,893,833 ("'833 Patent"); and 11,599,147 ("'147 patent").

**A.    Samsung Admits It Has Not Received Any Communication From Oura**

Samsung does not allege that this action arises out of any communications between Oura and Samsung.  In fact, there is no allegation that Oura ever contacted Samsung, sent a cease-and-desist letter, or identified specific patents.  Instead, Samsung alleges that this action arises from a supposed pattern by Oura of asserting "patent infringement against any and all competitors in the smart ring market" and Oura's statements to third parties "confirming its intentions to assert its patents against all competitors in the market."  (Compl. ¶ 10).

**B.    Samsung Admits It Has Not Even Begun Production Of Its Ring Product**

Samsung has not begun commercial production of its product; it alleges only that "[m]ass production of the Galaxy Ring is *scheduled* to begin in mid-June 2024."  (Compl. ¶ 41).  Samsung does not allege a date certain for when its products will actually be sold and shipped in the U.S. (or elsewhere).  Instead, Samsung says that it "*plans* to begin sales and shipments to customers of the Galaxy Ring in the United States *in or around* August 2024.  (*Id.* ¶ 40).

**C.    Samsung Points To Oura's Suits Against A Limited Number Of Companies That Had Begun Sales In The U.S.—Not "Indiscriminate Assertions" "Against Any And All Competitors"**

Samsung baldly alleges that its DJ action "arises from Oura's pattern of indiscriminate assertion of patent infringement against any and all competitors in the smart ring market." (Compl. ¶ 10).  To support its allegation, Samsung cites *three* cases against *three* companies.  Those cases do not involve Samsung, its affiliates, or the Galaxy Ring.  And those three companies are hardly "any and all competitors in the smart ring market." (*Id.* ¶ 10).  Rather, as a matter of public record, there are at least 43 other companies that sell smart rings.[3]  And while Samsung seeks a DJ against

---

[3]  *See, e.g.*, https://exactitudeconsultancy.com/reports/34772/smart-ring-market/ (screenshots attached as Ex. 1) at 5 (listing eighteen other ring manufacturers); https://www.techradar.com/health-fitness/fitness-trackers/best-smart-ring#section-the-quick-list (screenshots attached as Ex. 2) at 5-7 (listing two additional ring manufacturers); https://medium.com/@fitnesator/the-new-wave-of-smart-rings-iris-samsung-and-more-59769540045d (screenshots attached as Ex. 3) at 3 (listing four additional ring manufacturers); https://www.coolest-gadgets.com/smart-rings-statistics (screenshots attached as Ex. 4) at 3-7 (listing nine additional ring manufacturers); https://www.androidpolice.com/best-smart-rings/ (screenshots attached as Ex. 5) at 4-8 (listing three additional ring manufacturers); https://www.bestreviews.guide/smart-ring?&origin=google&google_params[matchtype]=&google_params[network]=x&google_para

1   the '147 patent, Oura did not assert it in any of the three suits Samsung cites.

2          Samsung also alleges that "Oura commenced a campaign to assert its patents against each

3   and every one of those competitors as soon as, or even before, they entered the U.S. market."

4   (Compl. ¶ 20). But Oura filed sued against three companies that had *each sold a commercial*

5   *product* in the U.S. *before and at the time of the complaint.*[4] *Ōura Health Oy v. Circular SAS*,

6   No. 6:22-cv-00478 (W.D. Tex. May 11, 2022), ECF No. 1 at ¶¶ 6, 39 (attached as Ex. 7) ("Circular

7   Complaint") (Oura sent cease and desist letter *four months before complaint* and Circular

8   marketed product in U.S. about *two months before complaint*); *Ōura Health Oy et al. v.*

9   *Ultrahuman Healthcare Pvt., Ltd. et al.*, No. 2:23-cv-00396 (E.D. Tex. Sept. 1, 2023), ECF No. 1

10  at ¶¶ 8, 14-15 (attached as Ex. 8) ("Ultrahuman Complaint") (Ultrahuman "launched" its product

11  "in July 2022," *over a year* before Oura's complaint); *Certain Smart Wearable Devices, Systems,*

12  *and Components Thereof* ("ITC Action"), Inv. No. 337-TA-1398, Compl. (Mar. 13, 2024) at ¶ 77

13  (attached as Ex. 9) (Oura purchased RingConn on August 15, 2023 in the United States, about

14  *seven months* before complaint).

15          **D.      Samsung Distorts Oura's And Its CEO's Public Statements, Which Did Not**

16                  **Threaten Suit Against Samsung**

17          Samsung alleges that "Oura's actions and public statements demonstrate that Oura will

18  continue asserting patent infringement against other entrants into the U.S. smart ring market,

19  including Samsung." (Compl. ¶ 24). But the statements Samsung cites were *not* made by Oura to

20  Samsung. Nor did they allege infringement by Samsung. Instead they are general statements by

21  Oura's CEO and VP of Consumer Software (1) about intellectual property enforcement (*id.* ¶¶ 27,

22  30-31) and (2) the strength of Oura's intellectual property portfolio. (*Id.* ¶¶ 26-29). Moreover, in

---

23  ms[device]=c&google_params[creative]=&google_params[keyword]=&google_params[adpositi
24  on]=&google_params[adgroupid]=&google_params[campaignid]=19663471628&bs=&google_
    params[feeditemid]=&google_params[targetid]=&google_params[loc_interest_ms]=&google_pa
25  rams[loc_physical_ms]=9032054&google_params[devicemodel]=&google_params[target]=&de
    st=0&sys_id=0|942&gclsrc=aw.ds&gad_source=1&gclid=CjwKCAjw65-
26  zBhBkEiwAjrqRMCnSlPM35KPbUUvqEYSOTD2uITF35hcdIJ3wLVVc75oLbu0eNlt1gBoCn1
    UQAvD_BwE (screenshots attached as Ex. 6) at 2-5 (listing seven additional ring manufacturers).

27  [4] Samsung even admits that Ultrahuman began shipping its ring products into the United States
    "in or around early 2023," approximately *nine months* before Oura filed its complaint. (Compl.
28  ¶ 22). It also admits RingConn "began shipping to the United States on or around August 2023,"
    *seven months* before Oura's complaint. (*Id.* ¶ 23).

the lone statement that mentions Samsung, Oura's CEO stated that "*[w]e'll see whether or not* it [i.e., the future Samsung product] infringes on [Oura's technology]. And frankly, we'll take the action that's appropriate." (*Id*. ¶ 27).

As detailed below, Samsung's allegations regarding these statements are rife with inconsistencies and statements taken out of context. For example, Samsung alleges that "Oura declared its intention to assert its intellectual property against any future smart ring competitors." (Compl. ¶ 24). Samsung never cites such a declaration. Instead, Oura's CEO made clear (which Samsung conveniently omits) that Oura "support[s] and welcome[s] innovation that moves [smart rings] forward. Unfortunately, when we see companies take shortcuts that imitate and ride the coattails of our innovation, we have no choice but to take action." (*Id*. ¶ 30).[5] Samsung further omits portions of statements by Oura's CEO that Oura "will see what *gets delivered in the market*, we'll see *whether or not it infringes* on us and frankly we'll take the action that's appropriate." (*Id*. ¶ 27).[6] Further inconsistencies and statements taken out of context in Samsung's allegations are discussed more comprehensively below.

## III.    LEGAL STANDARD

Under the Declaratory Judgment Act, this Court has subject matter jurisdiction only if the suit presents an "actual controversy." 28 U.S.C. § 2201(a); *see also* U.S. Const. Art. III. Although "[t]here is no bright-line rule" to satisfy this standard, the Supreme Court has held that, under all the circumstances, there must be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Allied Mineral*, 870 F.3d at 1139 (quoting *MedImmune*, 549 U.S. at 127).[7] That is, the dispute must be "definite and concrete," not based on "a hypothetical state of facts." *Id*. at 1339, 1341. Accordingly, "[d]eclaratory judgment jurisdiction requires some *affirmative act* by the patentee" to enforce its patents against the plaintiff; the latter's "*fear of a future infringement suit is*

---

[5] Citing https://ouraring.com/blog/oura-files-itc-action-for-patent-infringement/ (screenshots attached as Ex. 10) at 2.

[6] Citing https://www.youtube.com/watch?v=IX0A1LTgdNE (screenshots attached as Ex. 11) at 2-3.

[7] Federal Circuit law controls on this issue. *Microchip Tech. Inc. v. Chamberlain Grp*., 441 F.3d 936, 940 (Fed. Cir. 2006).

*insufficient* to confer jurisdiction." *Id.*; *see also Finisar Corp. v. Capella Photonics, Inc.*, No. 20-cv-07629-EMC, 2021 U.S. Dist. LEXIS 41077, at *11 (N.D. Cal. Mar. 3, 2021) (jurisdiction requires "both (1) an affirmative act by the patentee related to the enforcement of his patent rights" directed at the plaintiff and "(2) meaningful preparation to conduct potentially infringing activity").

Samsung "bears the burden of demonstrating that a case of actual controversy existed at the time the declaratory action was filed." *AIDS Healthcare*, 890 F.3d at 990. If Samsung fails to meet its burden, this Court should dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. *See, e.g.*, *Allied Mineral*, 870 F.3d at 1341 (affirming dismissal under Rule 12(b)(1)).

## IV.    ARGUMENT

Samsung's Complaint does not establish subject matter jurisdiction for two reasons. ***First***, the facts that Samsung alleges, even if taken as true, do not establish an actual controversy as a matter of law. Samsung fails to allege any "affirmative act by [Oura] to assert patent rights against [Samsung] for any present or planned activity." *AIDS Healthcare*, 890 F.3d at 994. That is dispositive. Further, the remainder of the circumstances do not rise to the level of a case of actual controversy—particularly where the Galaxy Ring has not "***been sold or offered for sale***," *Innovative Therapies*, 599 F.3d at 1380, and the Federal Circuit has rejected reliance on third party suits—as Samsung urges here—as failing to "meet the minimum standard discussed in *Medimmune*." *Innovative Therapies*, 599 F.3d at 1382. ***Second***, while the above alone should dispose of the Complaint, Samsung's allegations are on their face untrue mischaracterizations that are refuted by Samsung's own Complaint, cited materials, and the public record. In short, Samsung's attempt to manufacture jurisdiction also fails.

### A.    Samsung's Allegations Fail To Establish Subject Matter Jurisdiction As A Matter Of Law

#### 1.    Samsung Does Not Allege Any Affirmative Act By Oura

Samsung fails to allege that Oura made any affirmative act to enforce its patents. Indeed, Samsung never alleges that it communicated with Oura, let alone regarding Oura's Patents. By contrast, "[a]n affirmative act ***requires more than a communication*** from a patent owner to

another party." *Finisar*, 2021 U.S. Dist. LEXIS 41077, at *11.  The fact that Samsung does not identify "threats of litigation or even any direct communication" from Oura should be dispositive. *Allied Mineral*, 870 F.3d at 1340; *see also Finisar*, 2021 U.S. Dist. LEXIS 41077, at *12 (finding there was no affirmative act when "[t]here is no communication from [patentee] indicating an intent to enforce the patents against [plaintiff]").

The Federal Circuit's decision in *Allied Mineral* is particularly instructive.  There, the patentee had ***actually sued*** plaintiff's affiliates in Mexico on the Mexican equivalent of the patent at issue.  870 F.3d at 1338-39.  Nonetheless, the Federal Circuit held even that those acts were insufficient to support DJ jurisdiction.  *Id.*  As the Federal Circuit explained, "[d]eclaratory judgment jurisdiction requires some affirmative act by the patentee" to enforce its patents that is "***directed towards the plaintiff.***"  *Id.* at 1339-40.  The plaintiff's reliance on suits against its own affiliates, involving a foreign equivalent of the U.S. patent at issue, did not amount to "threats of litigation or even any direct communication" aimed *at the plaintiff*.  *Id.* at 1340.  Moreover, the Federal Circuit also relied on its prior decision in *Innovative Therapies*, where it found there was no affirmative act even where "the patentee stated it would sue [plaintiff] '100% no doubt about it' on 'any product that scratches the surface of [patentee's] patents.'"  *Id.* at 1340 (citing *Innovative Therapies*, 599 F.3d at 1381).  These principles control here.

Like in *Allied Mineral*, Oura "has not directed any actions towards [Samsung], nor has it litigated or threatened litigation in the United States or on [the Oura] patent[s]."  *Id.* at 1339.  That absence of any "threats of litigation or even any direct communication" from Oura to Samsung is dispositive as it was in *Allied Mineral*.  *Id.* at 1340.  And it falls even shorter of an affirmative act than the threats of litigation between the parties did in either *Allied Mineral* or *Innovative Therapies* since Samsung does not allege that Oura communicated with any Samsung affiliates about infringement for distributing its product.  *Id.* at 1338-40.

Courts in this District have reached the same conclusion.  In *Finisar*, patentee had *actually* sued plaintiff's customers, alleging infringement because the customers' products incorporated plaintiff's infringing technology.  2021 U.S. Dist. LEXIS 41077, at *5-6.  The plaintiff then filed its DJ action, claiming that the suits against its customers "g[a]ve rise to an actual controversy as

1    to whether [plaintiff] might be liable for direct infringement." *Id.* at *10. The court rejected that

2    argument. The plaintiff "fail[ed] to allege any affirmative act" because, despite the existence of

3    the customer suits, "there [wa]s ***no communication from [patentee]*** indicating an intent to enforce

4    the patents ***against [plaintiff]***." *Finisar*, 2021 U.S. Dist. LEXIS 41077, at *11-12. Likewise, in

5    *Proofpoint*, the court found no affirmative act where the plaintiff "ha[d] ***not asserted that it had***

6    ***any contact*** with [patentee] prior to bringing suit" and had not indicated in its complaint that the

7    patentee "claimed a right to a royalty from [DJ plaintiff], sent [DJ plaintiff] a cease-and-desist

8    letter, or communicated with [DJ plaintiff's] employees." *Proofpoint, Inc. v. InNova Patent*

9    *Licensing, LLC*, No. 5:11-CV-02288-LHK, 2011 U.S. Dist. LEXIS 120343, at *10 (N.D. Cal. Oct.

10   17, 2011). While the patentee had sued the DJ plaintiff's customers for use of the infringing

11   products in other districts, that was not an "affirmative act" related to the enforcement a specific

12   patent "that was 'directed' at [the DJ plaintiff]." *Id.* at *8-10. These principles also apply here.

13         Like the plaintiffs in *Finisar* and *Proofpoint*, Samsung alleges no direct communication or

14   contact with Oura. Indeed, the facts here are even more removed from an affirmative act than in

15   *Finisar* and *Proofpoint* because, unlike the plaintiffs in *Finisar* and *Proofpoint*, Samsung does not

16   even allege that Oura has communicated ***with third parties*** about infringement by Samsung's

17   Galaxy Ring, let alone ***with Samsung***.

18         In sum, Samsung alleges no affirmative act by Oura. That alone warrants dismissing

19   Samsung's Complaint. *See Allied Mineral*, 870 F.3d at 1340; *Innovative Therapies*, 599 F.3d at

20   1382; *Finisar*, 2021 U.S. Dist. LEXIS 41077, at *11; *Proofpoint*, 2011 U.S. Dist. LEXIS 120343,

21   at *10.

22       **2.**    **The Remaining Circumstances Samsung Alleges Confirm There Is No**

23           **Jurisdiction**

24         In addition to the lack of an affirmative act (which, as discussed, is dispositive), the

25   remaining circumstances Samsung purports confirm there is no jurisdiction. Indeed, "[t]he totality

26   of the circumstances" must "rise to the level of a case of actual controversy" for subject matter

27   jurisdiction to exist. *Allied Mineral*, 870 F.3d at 1139. Samsung's version of the circumstances

28   fails to establish an actual controversy as a matter of law for five additional reasons.

*First*, Samsung only alleges that it "**plans** to begin sales and shipments to customers of the Galaxy Ring in the United States in **or around** August 2024" on a product that is not even in production.  (Compl. ¶ 40).  That amounts to a "hypothetical state of facts" rather than the "definite and concrete" dispute that *Medimmune* requires.  549 U.S. at 127.  Indeed, the "uncertainty of whether future infringement might occur at all **weighs against** the immediacy and reality requirement of declaratory action."  *AIDS Healthcare*, 890 F.3d at 992.

*Second*, Samsung concedes its Galaxy Ring has not been produced or marketed for sale in the U.S.  (Compl. ¶¶ 40-42); *supra* at II.B.  The fact that "**no such device had been sold or offered for sale**" weighs against finding the existence of a controversy.  *Innovative Therapies*, 599 F.3d at 1380; *see also McCabe v. Rose*, No. SA CV 13-00125-DOC (MLGx), 2013 U.S. Dist. LEXIS 93930, at *12-13 (C.D. Cal. July 1, 2013) (finding fact that "Plaintiffs have not sold a single [] device yet" weighed against DJ jurisdiction).

*Third*, Samsung alleges Oura has a supposed "pattern of indiscriminate assertion of patent infringement against any and all competitors in the smart ring market" based on three litigations against third parties and their products.  (Compl. ¶¶ 10, 13, 20-23).  But the Federal Circuit and other courts have squarely held that a "pattern" against unrelated third parties is insufficient to confer DJ jurisdiction.  *Innovative Therapies*, 599 F.3d at 1382; *Finisar*, 2021 U.S. Dist. LEXIS 41077, at *12 (finding no affirmative act despite litigations against plaintiff's customers for use of plaintiff's products since there was "no communication" from patentee).  Reiterating the need for an affirmative act, *see supra*, the "fact that [the patentee] had filed infringement suits against other parties for other products does not, **in the absence of any act directed toward [the plaintiff]**, meet the minimum standard discussed in *Medimmune*."  *Innovative Therapies*, 599 F.3d at 1382.  Similarly, even where the plaintiff alleges the "defendant was demonstrably litigious," there is no jurisdiction where "**there were no pre-suit communications between the parties** upon which the declaratory judgment plaintiff could have formed an objectively reasonable anticipation of imminent suit by the defendant."  *Ontel Prods. Corp. v. Yeti Coolers, LLC*, No. 16-5712 (SDW) (LDW), 2017 U.S. Dist. LEXIS 110508, at *11 (D.N.J. June 30, 2017); *see also Allied Mineral*,

870 F.3d at 1340 (finding no affirmative act despite the existence of foreign litigations on related patents since there was no "direct communication" between the parties).

Moreover, there is no "pattern" that Oura enforces its '147 patent because Oura has never asserted it against any party. The fact that the "parties ha[ve] not previously engaged in litigation over the ['147] patent, and [Oura] w[as] not engaged in a larger pattern of litigation on the patent" "weigh[s] against finding standing." *Cepheid v. Roche Molecular Sys., Inc.*, No. C-12-4411 EMC, 2013 U.S. Dist. LEXIS 7446, at *32-33 (N.D. Cal. Jan. 17, 2013); *Allied Mineral*, 870 F.3d at 1339 (the fact that patentee had taken "no actions with regard to its '974 patent" weighed against finding standing).

*Fourth*, Samsung alleges that "Oura has accused certain features of competing smart rings of infringing Oura's patents, where the same or similar features are found on the forthcoming Galaxy Ring." (Compl. ¶ 44.) That also fails as a matter of law. The Federal Circuit has explained that allegations about "***'technological characteristics' do not establish a justiciable controversy*** with the patentee,"—even when the device allegedly "has the same technological characteristics" as "other [] devices that [the patentee] has charged with infringement." *Innovative Therapies*, 599 F.3d at 1380; *see also First Quality Baby Prods., LLC v. Kimberly-Clark Worldwide, Inc.*, No. 1:CV-09-0354, 2009 U.S. Dist. LEXIS 51961, at *9-10 (M.D. Pa. June 15, 2009) (finding the fact "that every other company that introduced diapers having elastomeric ears with non-parallel edges was sued by K-C for infringement of the '298 patent … [wa]s *not controlling*" and that "without more, does *not* indicate a 'definite and concrete' dispute that is 'real and substantial'"). Samsung's allegations directly contradict this principle.

*Fifth*, none of the public statements by Oura that Samsung cites in its Complaint creates a controversy. Samsung relies on public statements by Oura's CEO and other employees about (1) the strength of its "IP portfolio" (Compl. ¶¶ 26-29) and (2) protecting its intellectual property and praising the patent system. (*Id.* ¶¶ 27, 30-31); *supra* at II.D. But those were not "***directed specifically at the party seeking declaratory judgment***"—instead, they were directed at the media or general public. *Proofpoint,* 2011 U.S. Dist. LEXIS 120343, at *8. Such "public statements regarding the patents owned by a patent owner, and that it defends the patent[s] it owns, '***do not***

1    *suffice* to show an imminent threat of litigation.'" *Celltrion Healthcare Co., Ltd. v. Kennedy Tr.*

2    *for Rheumatology Rsch.*, No. 14 Civ. 2256 (PAC), 2014 U.S. Dist. LEXIS 166491, at *11

3    (S.D.N.Y. Dec. 1, 2014); *see also IMPAX Labs., Inc. v. Medicis Pharm. Corp.*, No. C-08-0253

4    MMC, 2008 U.S. Dist. LEXIS 111789, at *2, *5, *10 (N.D. Cal. Apr. 16, 2008) (finding CEO

5    statements that company would "be very vigorous… in enforcing [its] patents" and would

6    "aggressively and vigorously enforce [its patent] against generic competitors" did not "show[] a

7    controversy of sufficient immediacy and reality to warrant the issuance of a declaratory

8    judgment").

9        Samsung also cites a single comment by Oura's CEO that Oura will "see whether **or not**

10   [the Samsung product] infringes on [Oura's technology].  And frankly, we'll take the action that's

11   appropriate."  (Compl. ¶ 27.)  But, on its face, this statement makes clear that Oura will wait and

12   see what appropriate action it might take at some future (unspecified) time.  That is the opposite

13   of a concrete controversy.  *See MedImmune*, 549 U.S. at 127 (dispute must be "definite and

14   concrete," not based on "hypothetical state of facts").  The fact that Oura may "gather[]

15   information regarding potential infringement" is not enough to establish jurisdiction.  *Geospan*

16   *Corp. v. Pictometry Int'l Corp.*, 598 F. Supp. 2d 968, 971 (D. Minn. 2008).  Indeed, in *Innovative*

17   *Therapies*, the patentee's executives directly told the plaintiff it would sue it "**100% no doubt**

18   **about it**" on any product that "scratches the surface of [patentee's] patents."  *Innovative Therapies*,

19   599 F.3d at 1381.  Even that was insufficient to create a controversy.  And unlike in *Innovative*

20   *Therapies*, Oura's CEO never talked to Samsung and never imminently threatened suit.

21       Further, Oura's CEO never "identified **a specific [Oura] patent** that [he] believed

22   [Samsung] infringed" or even might infringe.  *KOPP Dev., Inc. v. Metrasens, Inc.*, No. 1:21-CV-

23   01216-PAB, 2022 U.S. Dist. LEXIS 36286, at *12 (N.D. Ohio Feb. 28, 2022).  "Without

24   identifying a specific patent, any potential infringement controversy between [Oura] and

25   [Samsung] remains hypothetical and vague, and jurisdiction therefore cannot lie."  *Id.*; *see also*

26   *3D Sys., Inc. v. Envisiontec, Inc.*, 575 F. Supp. 2d 799, 805-06 (E.D. Mich. 2008) (concluding that,

27   although defendant-patentee informed plaintiff's distributor that it would sue the distributor for

28   patent infringement, there was no substantial controversy because the defendant-patentee never

took further action or **specifically identified which patents it believed the plaintiff infringed**).

\*     \*     \*     \*     \*

Even accepting Samsung's allegation, there is no concrete controversy.  Under Federal Circuit law, the lack of any affirmative act by Oura to enforce its patents against Samsung is fatal to Samsung's DJ action.  *Allied Mineral*, 870 F.3d at 1339-41.  The other alleged circumstances—including Samsung's lack of any product in the United States—confirm that there is no controversy.  This Court need not resolve any factual disputes to reach that conclusion and should dismiss for lack of jurisdiction.

### B.    Samsung's Allegations Are On Their Face Incorrect And Distortions Of The Public Record

Even worse, Samsung's jurisdictional allegations are rife with inaccuracies and contradicted by the Complaint and the materials it cites.  The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal cites omitted); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1324-26 (Fed. Cir. 1998) (at Rule 12 stage, the "court was not required to accept as true the inconsistent allegations in the second amended complaint" nor representations it viewed "as nonsensical.").[8] That principle applies here for five reasons.

***First***, the Complaint and cited materials contradict Samsung's allegation that Oura has a "pattern of indiscriminate assertion of patent infringement against any and all competitors in the smart ring market."  (Compl. ¶ 10).  Samsung alleges only that Oura has sued three companies.  (*Id*. ¶¶ 21-23).  But that is not "all" of Oura's competitors.  (*Id*. ¶¶ 21-23).  The very article Samsung cites recognizes at least two more companies that Oura has not sued.  (*Id*. ¶ 28 ("Amazfit and Evie both rolled out enticing-looking smart ring models" in January 2024)).[9]  Further, as a

---

[8] Ninth Circuit law governs on "purely procedural question[s]."  *Colida v. Motorola, Inc.*, 77 F. App'x 516, 517 (Fed. Cir. 2003).

[9] Citing https://www.tomsguide.com/wellness/oura-ceo-interview-samsung-galaxy-ring-is-a-validation-for-the-category (screenshots attached as Ex. 12) at 3.

matter of public record, there are *at least 43* other companies with ring products, which Samsung concedes Oura has not sued.  *Supra* at II.C.  That is hardly a "pattern of indiscriminate assertion of patent infringement against any and all competitors," as Samsung urges.

*Second*, Oura has not sued every competitor "as soon as, or even before, they entered the U.S. market."  (Compl. ¶ 20).  In the three cases Samsung cites, each accused infringer marketed a commercial product in the U.S. at the time of the suit and had been doing so months prior to the complaint.  In the Circular case, the Circular Ring "c[ould] be purchased for $264" at the time of the complaint and had been marketed at an expo in the United States "on or around March 13-16, 2022," approximately *two months* prior to the complaint.  Circular Complaint at ¶¶ 6, 39.  In the Ultrahuman case, Samsung admits that Ultrahuman began shipping its ring products "to the United States in or around early 2023," *nine months* before Oura filed its complaint (Compl. ¶ 22), and had "launched" its product "in July 2022," *over a year* before Oura's complaint.  Ultrahuman Complaint at ¶¶ 8, 14-15.  And in the ITC action, Samsung admits RingConn "began shipping [its product] to the United States on or around August 2023," *seven months* before Oura's complaint. (Compl. ¶ 23).  In each instance, Oura sued *after*—not "as soon as, or even before—the accused infringer entered the U.S. market," with the accused product.  (*Id*. ¶ 20).

*Third*, Samsung is incorrect that Oura has asserted all of the Oura Patents at issue against other smart ring manufacturers.  (Compl. ¶ 14).  To the contrary, Oura has never asserted its '147 patent.  (*Id*. ¶¶ 20-23, 132-159).

*Fourth*, Oura has not declared "its intention to assert its intellectual property against any future smart ring competitors."  (Compl. ¶ 24).  Samsung distorts the statements at issue by taking them out of their plain context.  In fact, in context, the statements show Oura's balanced approach.  For example, Samsung cites an interview where Oura's CEO said Oura "will see what *gets delivered in the market*, we'll see whether or not it infringes or not on us and frankly we'll take the action that's appropriate."  (*Id*. ¶ 27).[10]  Likewise, Samsung cherry-picks portions of the Oura CEO's statement in paragraph ¶ 30, omitting his statement that Oura "support[s] and welcome

---

[10] Citing https://www.youtube.com/watch?v=IX0A1LTgdNE (screenshots attached as Ex. 11) at 2-3.

innovation that moves [smart rings] forward.  Unfortunately, ***when we see companies take***

***shortcuts*** that imitate and ride the coattails of our innovation, we have no choice but to take

action." (*Id*. ¶ 30).[11]  Oura's measured approach belies Samsung's allegations that Oura will assert

its intellectual property "indiscriminate[ly]" against "any and all" competitors.

> ***Fifth***, Samsung is incorrect that "Oura's immediate response to the announcement of the

Galaxy Ring was to point to the purported strength of its intellectual property portfolio." (Compl.

¶ 24).  Samsung selectively quotes statements made by Oura's CEO to insinuate that Oura's CEO

mentioned its strong intellectual property portfolio in response to Samsung's announced product.

(*Id*. ¶ 26).  Again, Samsung omits the full quote, which includes: "***[w]ith new features released***

***regularly***, Oura has the strongest IP portfolio — in both hardware and software — for the smart

ring form factor, with 100 granted patents, 270 pending patent applications and 130+ registered

trademarks.  ***New players entering the space is validation for the category*** and drives us to aim

higher to serve our members and community." (*Id*. ¶ 26).[12]  Oura's CEO was not "boasting" about

Oura's IP in response to Samsung's announcement but rather was referring to Oura's IP in the

context of Oura's own market-leading, innovative proprietary ring features.

> Indeed, Samsung's quotes from Oura's CEO and VP, when read in context, confirm that

Oura welcomed Samsung's planned entrance into the smart ring market as "validation," not as a

threat.  (Compl. ¶ 26);[13] *see also* (*id*. ¶ 28)[14] (statement by Oura CEO that "[n]ew players entering

the space ***are validation for the category***."); (*id*. ¶ 29)[15] (statement by Oura VP that "[n]ew players

like Samsung entering the space ***is validation for the category***.").

*    *    *    *    *

---

[11] Citing https://ouraring.com/blog/oura-files-itc-action-for-patent-infringement/ (screenshots attached as Ex. 10) at 2.

[12] Citing https://techcrunch.com/2024/01/17/samsung-is-taking-on-oura-with-the-galaxy-ring/ (screenshots attached as Ex. 13) at 3.

[13] Citing https://techcrunch.com/2024/01/17/samsung-is-taking-on-oura-with-the-galaxy-ring/ (screenshots attached as Ex. 13) at 3.

[14] Citing https://www.tomsguide.com/wellness/oura-ceo-interview-samsung-galaxy-ring-is-a-validation-for-the-category (screenshots attached as Ex. 12) at 4.

[15] Citing https://www.laptopmag.com/smartwatches/oura-vp-on-samsung-galaxy-ring-companies-are-scared-of-missing-out-on-the-next-big-wave (screenshots attached as Ex. 14) at 4.

1    Samsung's Complaint relies on facially inaccurate assertions that confirm there is no actual

2  controversy at the time of the Complaint.  But, as explained above, *even accepting* those facially

3  flawed factual assertions, there is no jurisdiction as a matter of law under binding Federal Circuit

4  precedent.  *Supra* at IV.A.

5  **V.    CONCLUSION**

6    Oura respectfully requests that the Court grant its Motion to Dismiss Samsung's Complaint

7  for Declaratory Judgment of Non-Infringement.

8

9  Dated:  June 14, 2024                          Respectfully submitted,

10                                                By: /s/ *Janine A. Carlan*
                                                  Janine A. Carlan (C.A. SB # 197613)
11                                                janine.carlan@afslaw.com
                                                  **ARENTFOX SCHIFF LLP**
12                                                44 Montgomery St., 38th Floor
                                                  San Francisco, CA 94104
13                                                Telephone:    (415) 757-5500
                                                  Facsimile:    (415) 757-5501
14
                                                  Jasjit Vidwan (D.C. SB # 252512)
15                                                (*pro hac vice pending*)
                                                  jasjit.vidwan@afslaw.com
16                                                **ARENTFOX SCHIFF LLP**
                                                  1717 K St., NW,
17                                                Washington, D.C. 20006
                                                  Telephone:    (202) 857-6000
18                                                Facsimile:    (202) 857-6395
19                                                *Attorneys for Declaratory Judgment Defendants*
                                                  *ŌURA HEALTH OY and OURARING INC.*
20

21

22

23

24

25

26

27

28