UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMSUNG ELECTRONICS CORPORATION, LTD., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>OURA HEALTH OY, et al.,<br><br>Defendants. | Case No.  24-cv-03245-AMO<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 29 |

In this patent case about smart rings, Plaintiffs Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") seek declaratory judgment that their Galaxy Ring does not infringe certain patents held by Oura Healthy Oy and Ouraring Inc. (collectively, "Oura"). ECF 1. Oura moves to dismiss Samsung's complaint, challenging the Court's subject matter jurisdiction over the action. ECF 29. Oura's motion is fully briefed and, because the Court found it suitable for decision without oral argument, it vacated the hearing. ECF 55 (citing L.R. 7-6). Having read the papers filed by the parties and carefully considered the arguments therein, as well as the relevant legal authority, the Court hereby **GRANTS** Oura's motion for the following reasons.

**I.     BACKGROUND**

Samsung designs, develops, and manufactures a range of electronic products, including wearable computers called the Galaxy Gear and Galaxy Watch Products, which have features such as fitness tracking, heart rate monitoring, and messaging. Compl. (ECF 1) ¶ 11. In May 2024, Samsung completed design of the Galaxy Ring, a "smart ring" that monitors wearers' heart rate, heart rate variability, blood oxygen, movement, and sleep. Compl. ¶ 12. At the time Samsung filed its complaint, it expected to commence mass production of the Galaxy Ring by mid-June

2024, including by selling the product in the United States in or around August 2024.  Compl. ¶ 12.

Oura also developed, manufactures, and sells a smart ring – the Oura Ring – and holds several patents that it has asserted against other smart ring manufacturers.  Compl. ¶¶ 10, 13-14.  In May 2022, Oura filed a lawsuit against Circular SAS ("Circular") in the Western District of Texas alleging Circular's ring and app infringe its U.S. Patent No. 10,842,429 (the " '429 Patent") and Patent No. 10,893,833 (the " '833 Patent").[1]  Compl. ¶ 21.  In September 2023, Oura filed a lawsuit against Ultrahuman Healthcare Pvt., Ltd. and Ultrahuman Healthcare Ltd. (collectively, "Ultrahuman") in the Eastern District of Texas, alleging Ultrahuman's wearable product and app infringe the '429 and '833 Patents, as well as U.S. Patent No. 11,868,178 (the " '178 Patent") and Patent No. 11,868,179 (the " '179 Patent).[2]  Compl. ¶ 22.  In March 2024, Oura filed a complaint with the International Trade Commission ("ITC") against Circular, Ultrahuman, and RingConn LLC and Guangdong Jiu Zhi Technology Co. Ltd., alleging infringement of the '429, '178, and '179 Patents, and seeking to obtain an exclusion order to block imports of respondents' smart rings.  Compl. ¶ 23.  Oura has asserted patent infringement based on features "found in virtually all smart rings," including the Galaxy Ring.  Compl. ¶ 32.  For example, Oura has asserted its patents against a ring containing electronics, sensors, and a battery; a ring containing electronic parts; a ring containing LED sensors, motion sensors, and Bluetooth functionality; and a ring that provides "scores" computed based on inputs like heart rate and temperature.  Compl. ¶¶ 32-36.

On January 17, 2024, Samsung introduced the Galaxy Ring at its biannual showcase of new consumer devices and technology.  Compl. ¶ 25.  Over the following months, statements attributed to Oura employees appeared in several news outlets regarding smart ring competitors.  On January 17, 2024, the following quote by Oura CEO Tom Hale appeared on the website TechCrunch: "Oura has the strongest IP portfolio – in both hardware and software – for the smart

---

[1] The '429 Patent is titled "Method and System for Assessing a Readiness Score of a User" and was issued November 24, 2020.  The '833 Patent is titled "Wearable Electronic Device and Method for Manufacturing Thereof" and was issued on January 19, 2021.

[2] The '178 and '179 Patents are both titled "Wearable Computing Device" and were issued January 9, 2024.  This lawsuit also includes a claim for copyright infringement.

1    ring form factor, with 100 granted patents, 270 pending patent applications and 130+ registered

2    trademarks." Compl. ¶ 26.  Within the next two weeks, Hale and Oura's VP of Consumer

3    Software, Jason Russell, made similar statements on the websites Tom's Guide and Laptop

4    Magazine.  Compl. ¶¶ 28-29.  On January 25, 2024, during an interview on CNBC, Hale stated

5    Oura would closely monitor the development of the Galaxy Ring for any potential intellectual

6    property violations and would "take the action that's appropriate."  Compl. ¶ 27.  On March 13,

7    2024, the day Oura filed its ITC complaint, Oura published a blog post by Hale stating that Oura is

8    "clear on where we stand when it comes to patent infringement: we've spent over a decade

9    investing countless hours of design, scientific research, and engineering into our hardware,

10   software, and algorithms to create Oura Ring and the Oura Membership experience, and we'll

11   always protect those efforts."  Compl. ¶ 30.  That same day, Business Wire published an article in

12   which Hale stated that Oura "support[s] innovation and embrace[s] competition, but . . . will take

13   action to defend our intellectual property."  Compl. ¶ 31.

14          On May 30, 2024, Samsung filed the instant action under the Declaratory Judgment Act,

15   28 U.S.C. §§ 2201-2202, seeking declaratory judgment of non-infringement of five of Oura's

16   patents – the '429, '178, '147, '179, and '833 Patents.  ECF 1.  On June 14, 2024, Oura moved to

17   dismiss Samsung's complaint.  ECF 29.  On January 9, 2025, Samsung filed a notice of voluntary

18   dismissal without prejudice of Counts III ('179 Patent) and IV ('833 Patent), ECF 51, as they had

19   been rendered moot by Oura's filing of statutory disclaimers of all claims of those two patents

20   during *inter partes* review proceedings, ECF 52 at 3.

21   **II.    LEGAL STANDARD**

22          Motions to dismiss pursuant to Federal Rule of Procedure 12(b)(1) challenge a court's

23   subject matter jurisdiction, and may be facial or factual.  A facial attack presumes the truth of the

24   plaintiff's allegations but asserts that they "are insufficient on their face to invoke federal

25   jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Facial attacks

26   are reviewed akin to Rule 12(b)(6) motions in that all allegations of the complaint are taken as true

27   and all reasonable inferences are drawn in favor of the plaintiff.  *Love v. United States*, 915 F.2d

28   1242, 1245 (9th Cir. 1990).  A factual attack "contests the truth of the plaintiff's factual

allegations, usually by introducing evidence outside the pleadings." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air*, 373 F.3d at 1039). In resolving a factual challenge, once the defendant contests the truth of the plaintiff's factual allegations, the plaintiff has the burden to support their allegations with competent proof. *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021) (quoting *Leite*, 749 F.3d at 1121). In resolving such a challenge, when the "jurisdictional issues are 'intertwined with an element of the merits of the plaintiff's claim,' the court must treat the motion like a motion for summary judgment and 'leave the resolution of material factual disputes to the trier of fact.' " *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1143 (9th Cir. 2024) (quoting *Leite*, 749 F.3d at 1122). But when allegations relating to standing are "separable from the merits of the case," the Court is free to "resolv[e] factual disputes if necessary." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 n.2 (9th Cir. 2023).

### III. DISCUSSION

Oura moves to dismiss Samsung's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Oura brings both a facial and a factual attack. *See* ECF 29 at 18 ("Even accepting Samsung's allegation, there is no concrete controversy. . . . This Court need not resolve any factual disputes to reach that conclusion") & ("Samsung's allegations are on their face incorrect and distortions of the public record"). As the motion can be resolved on the face of Samsung's complaint, the Court need not determine the accuracy of Samsung's allegations.

Under the Declaratory Judgment Act, courts only have jurisdiction over matters that present an "actual controversy." 28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the Act refers to the types of 'Cases' and 'Controversies' that are justiciable under Article III of the Constitution." *MedImmune v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). An Article III controversy may exist where a party seeks a declaration that its product does not infringe a patent, *see, e.g.*, *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1330 (Fed. Cir.

4

2014),³ and it is the plaintiff's burden to show an actual controversy existed at the time the declaratory action was filed. *AIDS Healthcare Found., Inc. v. Gilead Scis., Inc.*, 890 F.3d 986, 990 (Fed. Cir. 2018). "[L]ater events may not create jurisdiction where none existed at the time of filing." *GAF Building Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996).

A "case of actual controversy" is one that is "substantial . . . between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Allied Min. Prods., Inc. v. Osmi, Inc.*, 870 F.3d 1337, 1139 (Fed. Cir. 2017) (quoting *MedImmune*, 549 U.S. at 127). The dispute must be "definite and concrete," not based on "a hypothetical state of facts." *Id.* at 1339, 1341. Courts must determine whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127. In essence, a controversy exists where a patentee's actions "can be reasonably inferred as demonstrating intent to enforce a patent." *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 787 F. App'x 691, 700 (Fed. Cir. 2019). Specifically, declaratory judgment jurisdiction requires "both (1) an affirmative act by the patentee related to the enforcement of his patent rights" directed at the plaintiff and "(2) meaningful preparation to conduct potentially infringing activity." *Finisar Corp. v. Capella Photonics, Inc.*, 2021 WL 810227, at *4 (N.D. Cal. Mar. 3, 2021). As discussed below, Samsung has not sufficiently alleged an affirmative act, and thus the Court finds it appropriate to dismiss Samsung's complaint without reaching the issue of meaningful preparation.

Declaratory judgment jurisdiction requires "some affirmative act by the patentee" to enforce its patents against the plaintiff; plaintiff's "fear of a future infringement suit is insufficient to confer jurisdiction." *Allied Min.*, 870 F.3d at 1139. There is no bright-line rule that any particular conduct is either necessary or sufficient for a showing of an affirmative act. *Proofpoint*,

---

³ While dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) "is a procedural question not unique to patent law," it is therefore typically governed by regional circuit law. *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1380 (Fed. Cir. 2002). However, "[w]hether an actual case or controversy exists so that a district court may entertain an action for declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." *3M Co v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012).

5

1  *Inc. v. InNova Pat. Licensing, LLC*, 2011 WL 4915847, at *3 (N.D. Cal. Oct. 17, 2011). For
2  example, while "[a]n affirmative act requires more than a communication from a patent owner to
3  another party," *Finisar*, 2021 WL 810227 at *4, "direct communication between a patentee and a
4  declaratory plaintiff is not necessary to confer standing," *Arris Grp., Inc. v. Brit. Telecomms. PLC*,
5  639 F.3d 1368, 1378 (Fed. Cir. 2011); *see also UCP Int'l Co. v. Balsam Brands Inc.*, 787 F. App'x
6  691, 700 (Fed. Cir. 2019) ("[J]urisdiction does not turn on whether the patentee specifically
7  communicated with the declaratory judgment plaintiff."). Oura argues Samsung has failed to
8  allege an affirmative act because it has not alleged that it communicated with Oura prior to filing
9  the instant action. ECF 29 at 12-13. Because there is no requirement that a plaintiff allege pre-
10 suit communications, the Court rejects Oura's assertion that the absence of any such allegations is
11 dispositive.

12 However, an affirmative act must be "directed specifically at the party seeking declaratory
13 judgment," *Proofpoint, Inc.*, 2011 WL 4915847, at *3, and Samsung's complaint fails to allege
14 any action by Oura directed at Samsung. First, "while prior litigation is a circumstance to be
15 considered in assessing the totality of circumstances, the fact that [Oura] had filed infringement
16 suits against other parties for other products does not, in the absence of any act directed toward
17 [Samsung], meet the minimum standard discussed in *MedImmune*." *See Innovative Therapies*,
18 599 F.3d 1377 at 1382; *see also Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed.
19 Cir. 2008) (noting "prior litigious conduct is one circumstance to be considered in assessing
20 whether the totality of circumstances creates an actual controversy," but concluding that no
21 controversy was shown). The prior litigation referenced by Samsung would carry more weight in
22 the totality-of-the-circumstances analysis if the litigation was brought by Oura against Samsung.
23 *See, e.g.*, *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1358 (Fed. Cir. 2013) (finding a
24 sufficient affirmative act where defendant had accused plaintiff in prior litigation of infringing a
25 patent closely related to the one at issue); *Danisco*, 744 F.3d at 1331 ("[A] history of patent
26 litigation *between the same parties* involving related technologies, products, and patents is another
27 circumstance to be considered, which may weigh in favor of the existence of subject matter
28 jurisdiction.") (emphasis added); *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d

United States District Court
Northern District of California

6

1330, 1344 (Fed. Cir. 2007) ("[R]elated litigation involving the same technology and the *same parties* is relevant in determining whether a justiciable declaratory judgment controversy exists on other related patents.") (emphasis added); *Twitter, Inc. v. VoIP-Pal.com, Inc.*, 2020 WL 7342733, at *7 (N.D. Cal. Dec. 14, 2020) (concluding defendant's prior litigation – consisting of lawsuits against plaintiff for related patents as well as additional lawsuits against other companies – "weigh[ed] heavily in favor of a finding that Defendant ha[d] engaged in an affirmative act"). Thus, Samsung's allegations concerning Oura's suits against other parties do not suffice.

      Samsung seeks to avoid this result by invoking *Micron*, noting that – although the plaintiff had not yet been sued by the defendant at the time it filed its declaratory judgment action – the plaintiff had "watched [the defendant] sue each of the other leading [] manufacturers" of the product at issue. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008). However, that court's conclusion that an affirmative act had been alleged was not solely based on the fact that the plaintiff had observed its competitors get sued. *Id.* The court also relied on allegations that the defendant sent plaintiff four threatening letters and made public statements and issued annual reports that "confirm[ed] its intent to continue an aggressive litigation strategy." *Id; see also Alien Tech. Corp. v. Intermec, Inc.*, 2007 WL 63989, at *4 (D.N.D. Jan. 4, 2007) (concluding that a controversy existed where, in addition to suing other competitors, defendant had made public statements, including that " 'preparations are underway with respect to unlicensed suppliers like [plaintiff] and others. And we expect those enforcement actions by the end of the year, or within this year.' "). Samsung has made no such allegations and has pointed to no such specific conduct by Oura.[4]  Thus, unlike the *Micron* and *Alien* courts, the Court does not

---

[4] Oura argues there can be no "pattern" of enforcement of the '147 Patent because it has not asserted the patent against any party. ECF 29 at 16. However, the '147 Patent is closely related to the '833 Patent, and "[c]ourts have held that a patentee's accusing a party in litigation of infringing its patents can give rise to jurisdiction for the accused party to bring declaratory-judgment claims with respect to related patents of the patentee." *Dror v. Kenu, Inc.*, 2019 WL 5684520, at *9 (N.D. Cal. Nov. 1, 2019); *see also Arkema Inc. v. Honeywell, Int'l, Inc.*, 706 F.3d 1351, 1358 (Fed. Cir. 2013); *Seabord Intern., Inc. v. Cameron Intern. Corp.*, 2013 WL 3936889, at *9 (E.D. Cal. July 30, 2013) (finding that where patents "contain claims that are nearly identical" and are "part of the same family," infringement actions against one is a "sufficient affirmative act for declaratory judgment purposes"). Thus, litigation against the '833 Patent would be relevant to establishing an affirmative act regarding the '147 Patent.

7

have the same sort of identified threats of litigation by the declaratory judgment defendant that were concrete and unequivocally directed at the alleged infringer.

Second, none of the statements cited in Samsung's complaint were directed specifically at Samsung, and thus the statements do not establish an affirmative act. The statements include:

- "Oura has the strongest IP portfolio — in both hardware and software — for the smart ring form factor, with 100 granted patents, 270 pending patent applications and 130+ registered trademarks." Compl. ¶ 26.

- Oura would closely monitor the Galaxy Ring's development for any potential intellectual property violations; "It's very important for us to protect the innovations that we've brought to the market"; "We'll see whether or not [the Galaxy Ring] infringes on [Oura's technology]. And frankly, we'll take the action that's appropriate." Compl. ¶ 27.

- When asked if Oura's patents cover all competitive products in the market: "Anything is possible, but there are certainly things like the laws of physics, or the approach that you might take to pack a small number of sensors into a very small space, or the algorithms that you use to create biosignals and turn them into meaningful data." Compl. ¶ 27.

- When asked what Oura was doing to maintain its competitive edge, Oura's CEO referred to Oura's purported "strongest IP portfolio – in both hardware and software – for the smart ring form factor, with hundreds of granted patents." Compl. ¶ 28.

- When asked about Samsung's upcoming entry into the smart ring market, Oura's VP of Consumer Software stated Oura has "one of the strongest IP portfolios – in both hardware and software – for the smart ring form factor, with hundreds of granted patents, pending patent applications, and registered trademarks." Compl. ¶ 29.

- "We're clear on where we stand when it comes to patent infringement: we've spent over a decade investing countless hours of design, scientific research, and engineering into our hardware, software, and algorithms to create Oura Ring and the Oura Membership experience, and we'll always protect those efforts." Compl. ¶ 30.

- "This ITC filing represents an important milestone in our commitment to protecting our innovation. . . . Our message is clear: we support innovation and embrace competition, but we will take action to defend our intellectual property." Compl. ¶ 31.

Without more, these statements are insufficient to establish an affirmative act. Courts have found that similar statements, even considered together with other acts by the defendant, did not establish an actual controversy. In *Impax*, for example, a drug manufacturer made public statements about its strategy regarding generic competitors to a drug for which it held a patent:

- On a call with investment analysts, the defendant's CEO stated that defendant would "be very vigorous . . . in enforcing the patents" and that defendant had "hired a couple of [law] firms that I think are vicious in their enforcement and protection of patents,

8

1  because we want to send a very strong message that this needs to be an impenetrable defense around this brand"; and

2  - At a health care conference, the defendant's CEO stated that defendant intended "to enforce with the ultimate vigor the patents that have issued" in light of rumors that "generic companies have eyed this market because of the great success of [the drug] and have either prepared to or actually filed applications" with the Food and Drug Administration ("FDA").

*Impax Lab'ys, Inc. v. Medicis Pharm. Corp.*, 2008 WL 1767044, at *1 (N.D. Cal. Apr. 16, 2008). The *Impax* plaintiff argued that the defendant's public statements regarding enforcement of its patent – when considered together with plaintiff's submission of an application to the FDA to manufacture and sell the generic version of defendant's patented drug and defendant's refusal to provide a covenant not to sue – created an actual controversy, but the court disagreed. *Id.* at *3.

Similarly, in *Twitter v. VoIP-Pal.com*, the court noted that defendant had "publicly stated that it [would] continue to assert its patent rights until it is successful" by issuing a press release stating the company was "undeterred in [its] fight to assert [its] intellectual property rights"; that it "was not finished"; and that it "remain[s] firm in [its] resolve to achieve monetization for [its] shareholders and will continue to see this fight through until a successful resolution is reached." *7. The court did "not find this statement sufficient to demonstrate an affirmative act on its own" but found it to be "helpful context as to Defendant's intentions with respect to asserting its patent rights." *Id; see also Monolithic Power Sys. v. O2 Micro Intern. Ltd.*, 2007 WL 2318924, at *3 (N.D. Cal. Aug. 13, 2007) ("[T]he assertion of rights, evidenced through a prior lawsuit between the same parties regarding the same technology . . . and solidified through the express press release statement indicating an intent to sue alleged patent infringers, presents enough evidence to establish the case or controversy required for declaratory judgment jurisdiction.").

Oura's public statements, on their own, do not establish an affirmative act. The statements were not directed at Samsung. In fact, only three of them referenced the Galaxy Ring at all, and none explicitly threatened suit against Samsung. For example, Oura's statement that it will "see whether or not" the Galaxy Ring infringes its patents and will "take the action that's appropriate" is notably less explicit than the statements in *Impax* (that defendant hired a law firm and would be vicious in enforcing its patents) and *Twitter* (that defendant was undeterred in its fight and was not

9

finished asserting its intellectual property rights). Indeed, it is no surprise that patent owners would publicly make such statements regarding defense of their patents. *Impax*, 2008 WL 1767044, at *3 (citing *Bridgelux, Inc. v. Cree, Inc.*, 2007 WL 2022024 at *9 (N.D. Cal. 2007)).

As it must, the Court considers Samsung's allegations not in isolation, but together. *See MedImmune*, 549 U.S. at 127. Samsung has alleged Oura has sought to enforce its patents against some competitors, but not Samsung. Samsung has further alleged Oura has made public statements about the possibility of enforcing its patents against competitors, but none explicitly directed at Samsung. Considered together and assumed to be true, the Court finds these allegations do not reveal a likelihood or intent to enforce Oura's patents against Samsung, and concludes it lacks jurisdiction as the complaint does not allege an affirmative act.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Oura's motion to dismiss with leave to amend. Any amended complaint is due April 25, 2025. Because an actual controversy must have existed at the time this action was filed, *see GAF Building*, 90 F.3d at 483, the Court will only consider allegations that predate the filing of the initial complaint in deciding whether there is declaratory judgment jurisdiction. No additional parties or claims may be added without leave of Court or stipulation of Defendants. By April 10, 2025, the parties **SHALL** file a joint case management statement, including a proposed case schedule with specific dates.

**IT IS SO ORDERED.**

Dated: March 27, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**